Joshua Sabert Lowther, Esq.
Ga. Bar # 460398
Admitted *Pro Hac Vice*
Lowther | Walker LLC
101 Marietta St., NW, Ste. 3650
Atlanta, GA 30303
404.406.4052
jlowther@lowtherwalker.com
www.lowtherwalker.com

Attorney for Defendant
Alexandra Gehrke

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> ALEXANDRA GEHRKE, *ET AL.*, <br><br> Defendants. | 2:24-CR-01040-ROS-1 <br><br> **MOTION TO REVOKE ORDER OF DETENTION PENDING TRIAL** <br><br> Oral Argument Requested |

Ms. ALEXANDRA GEHRKE, pursuant to 18 U.S.C. § 3145(b), respectfully moves this Court to review and vacate the magistrate judge's detention order and to release her pending trial.

**I.   Procedural History**

On June 17, 2024, federal law enforcement agents arrested Ms. Gehrke and Mr. Jeffrey King, her husband and co-defendant. (Dkt. Text, June 17, 2024.)

On June 18, 2024, a federal grand jury in the District of Arizona indicted Ms. Gehrke and Mr. King, charging Ms. Gehrke with one count of conspiracy to commit health care fraud and wire fraud in violation of 18 U.S.C. §§ 1349, 1347, and 1343 (Count 1), two counts of health care fraud in violation of 18 U.S.C. §§ 1347 and 2 (Counts 2–3), one count of conspiracy to solicit, receive, offer, and pay kickbacks in violation of 18 U.S.C. § 371 and 42 U.S.C. §§ 1320a-7b(b)(1) and (2) (Count 4), one count of soliciting and receiving kickbacks in violation of

42 U.S.C. § 1320a-7b(b)(1) and 18 U.S.C. § 2 (Count 6), and three counts of transactional money laundering in violation of 18 U.S.C. §§ 1957 and 2 (Counts 8–10). (Indict. 1–21, ECF No. 6.)

On June 20, 2024, Ms. Gehrke appeared before this Court for an initial appearance, arraignment, and detention hearing; the Court conducted the initial appearance and the arraignment, but continued the detention hearing to June 25, 2024. (Mins., ECF No. 13.)

On July 8, 2024, after this Court continued the detention hearing at Ms. Gehrke's request from June 25, 2024, because the Government filed a lengthy motion for detention on June 24, 2024 (United States' Mot. for Detention, ECF No. 18) (Mins., ECF No. 24), and from July 2, 2024, because of an evidentiary issue (Mins., ECF No. 29), this Court held the detention hearing (Mins., ECF No. 36.)

On June 10, 2024, this Court memorialized its oral pronouncement of detention on June 8, 2024 (Order of Detention Pending Trial, ECF No. 39), specifically finding that Ms. Gehrke "is a serious flight risk, and there are not conditions that can be set to reasonably ensure her appearance at further court proceedings" (*id.* at 2).

II. **Memorandum of Law**

"If a person is ordered detained by a magistrate judge, . . . the person may file, with the court having original jurisdiction over the offense, a motion for revocation . . . of the [detention] order." 18 U.S.C. § 3145(b). After a magistrate judge's issuing an order on "any matter that does not dispose of a charge or defense[,] . . . [a] party may serve and file objections to the order within 14 days after being served with a copy of a written order . . . or at some other time the court sets." Fed. R. Crim. P. 59(a). "A district court's review of a magistrate judge's detention order is *de novo*." *United States v. Tuohy*, 2022 WL 17552442 at *2 (D. Ariz. Dec. 9, 2022).

A district court shall release a criminal defendant pending trial, subject to certain limited conditions, "unless the judicial officer determines that such release will not reasonably assure the appearance of the [defendant] as required or will endanger the safety of any other person or the community." 18 U.S.C. § 3142(b). However, a district court must find that "no condition or combination of conditions" will provide that assurance before it is authorized to detain a defendant pending trial. 18 U.S.C. § 3142(e)(1). The Government bears the burden of proof to demonstrate that a defendant poses a risk of flight by a preponderance of the evidence, and that a defendant poses a danger to any other person or the community by clear and convincing evidence. *United States v. Diaz-Hernandez*, 943 F.3d 1196, 1198 (9th Cir. 2019); *Quan v. Garland*, 2022 WL 576215 at *1 (9th Cir. Feb. 25, 2022). "Any doubts regarding the propriety of pretrial release are to be resolved in favor of the defendant." *Diaz-Hernandez*, 943 F.3d at 1198 (internal citation omitted).

As the magistrate judge correctly found (tr. 25:22–23), this case is not one in which "a rebuttable presumption arises that no condition or combination of conditions will reasonably assure the safety of any other person and the community." 18 U.S.C. § 3142(e)(2); *see* 18 U.S.C. § 3142(f)(1). Therefore, the Government, in support of its request for detention, initially bore (and continues to bear) the burden to prove by a preponderance of the evidence that Ms. Gehrke is a risk of flight, or by clear and convincing evidence that she is a danger to the community. 18 U.S.C. § 3142(f)(2). In this regard, the magistrate judge again correctly emphasized that "for these crimes, the government can't argue for detention based on danger; therefore, we are only looking at [flight risk under] the preponderance standard." (Tr. 25:23–25.)

    a.    **Detention Order**

The magistrate judge recognized that, in the Ninth Circuit, "there's a strong push to release people pending trial." (Tr. 42:11–15.) The magistrate

judge acknowledged that "there are multiple things that are in [Ms. Gehrke's] favor" (tr. 45:20–21), including her "extremely strong ties to the community" (tr. 45:2–3) and "absolutely no criminal record before these charges" (tr. 46:3–4).

Nonetheless, the magistrate judge eventually ordered Ms. Gehrke's detention pending trial, finding that "[t]he defendant has incredible incentive to flee" (tr. 46:9) because "[t]hese charges are very serious" (tr. 46:4); "[t]hat the defendant has recently traveled to Mexico and did not report that to Pretrial Services is profoundly concerning" (tr. 48:12–14); that there are "$14 million that's not been seized, and who knows how much in cryptocurrency" (tr. 49:14–15); and that her friend's plane "could get her easily to Central America" (tr. 51:14–16).

The magistrate judge further stated that "[i]f I put her on the most restrictive conditions, which would include home incarceration, she could just cut that ankle monitor off. She can use any computer." (Tr. 52:8–10.) The Magistrate Judge found "by a preponderance of the evidence the defendant is a serious flight risk and there are not conditions that I could set that reasonably assure the defendant's appearance for further court proceedings." (Tr. 53:20–23.)

    **b.**    **Flight**

A district court must consider the following factors when determining whether there are conditions of release that reasonably will assure the appearance of a defendant at future court proceedings: "(1) the nature and circumstances of the offense charged . . . ; (2) the weight of the evidence against the person; (3) the history and characteristics of the person . . . ; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g). In this case, most of these statutory factors are in Ms. Gehrke's favor.

//

**1.     Nature and Circumstances of the Offenses**

The charges against Ms. Gehrke are financial crimes that relate to an alleged health care fraud conspiracy. They are not crimes of violence, sex-trafficking, or terrorism, and they do not involve a minor victim, a controlled substance, a firearm, an explosive, or a destructive device. Although health care fraud-related charges are serious, all federal felony cases are; therefore, the nature of the charges do not disqualify Ms. Gehrke from pretrial release.

**2.     Weight of the Evidence**

Ms. Gehrke acknowledges that the magistrate judge is required to consider the information available to it concerning the weight of the evidence (18 U.S.C. § 3142(g)(2)); however, to avoid a pretrial determination of guilt in contravention of the pretrial bail statute (18 U.S.C. § 3142(j)), the United States Court of Appeals for the Ninth Circuit has held that the weight of the evidence remains "the least important of the various factors" and may be considered only in terms of the likelihood that the person will fail to appear or will pose a danger to any person or to the community. *United States v. Hir*, 517 F.3d 1081, 1090 (9th Cir. 2008).

Ms. Gehrke submits that the weight of yet-to-be examined and rebutted evidence is always strong at any detention hearing in the early stage of a criminal proceeding, whether the hearing is after a magistrate judge issues an arrest warrant based on an affidavit in support of a complaint or a grand jury returns a true bill of indictment. The weight of the evidence in this case—even assuming, *arguendo*, that is it strong—is not extraordinary: it is that which is typical of any alleged health care fraud scheme, having no specific or material bearing on the issues of Ms. Gehrke's posing a risk of flight. Indeed, if any undue weight was given to this factor, then no defendant would be released pretrial on bond essentially in any health care fraud cases.

//

### 3. History and Characteristics of the Person

18 U.S.C. § 3142(g)(3) requires this Court to consider the following factors related to the history and characteristics of a defendant:

> the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, record concerning appearance at court proceedings[,] and . . . whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law.

18 U.S.C. § 3142(g)(3)(A) and (B).

#### A. Character

Ms. Gehrke has excellent character, and an excellent reputation in her community. There is absolutely no evidence to controvert that.

#### B. Physical and Mental Condition

Ms. Gehrke is in excellent physical condition, and in good mental condition. (Tr. 28:3–5.) She was diagnosed at the age of fourteen with Attention-Deficit/Hyperactivity Disorder, and she currently suffers from mild anxiety; however, she manages both of these conditions with prescription medication — daily for ADHD and only as needed for anxiety. (Tr. 28:5–10.)

#### C. Family Ties

All of Ms. Gehrke's immediate and extended family reside in the Phoenix area (tr. 30:16-19), some of whom were present in court at the detention hearing in order to support her (tr. 30:17–18).

//

6

**D.     Employment**

Ms. Gehrke has worked in the medical-sales field for many years. She was not actively employed at the time of her arrest because she previously had sold her company. If this Court releases her pending trial, would be able to seek and maintain gainful employment.

**E.     Financial Resources**

The Government has seized $60 million from Ms. Gehrke and Mr. King (tr. 22:17), but "believe[s] that [they] have access to potentially tens of millions of dollars" (United States' Mot. for Detention 6, ECF No. 18) still. This assertion falls below even a preponderance-of-the-evidence standard.

The Government further contends that Ms. Gehrke was untruthful to the pretrial services officer in estimating her assets. (Tr. 22:13–24.) The pretrial services officer interviewed Ms. Gehkre for the purpose of preparing a pretrial services report while Ms. Gehrke was in custody with no means by which to accurate estimate a then-substantial asset-portfolio—any inaccuracy was unintentional, and regardless, may be addressed through conditions of release.

**F.     Length of Residence in the Community**

Ms. Gehrke is a lifelong resident of Phoenix, with the exception of her having spend four years in California to attend college and work. (Tr. 30:14–16.)

**G.     Community Ties**

Ms. Gehrke's family members are residents of the Phoenix area (tr. 30:17–19); her friends and colleagues live in the Phoenix area (tr. 30:25–31:1); and her late father was a practicing attorney and a member in good standing of the State Bar of Arizona. (Tr. 31:1–2.)

**H.     Past Conduct and Criminal History**

Ms. Gehrke has no criminal convictions (tr. 31:8–9), and at thirty-eight years of age, she has never been accused of a crime until the existence of this case (tr. 31:9–10). Notably, the allegations in this span only the past two years.

7

(Tr. 31:10–11.)

### I.   History Relating to Drug or Alcohol Abuse

Though Ms. Gehrke tested positive for methamphetamine in an initial drug test, the results of that test was not confirmed at a laboratory, and likely the result of her stimulant medications for ADHD. (Tr. 47:10–16.) Even if she had abused methamphetamine (which she has not), there are conditions, as the magistrate judge noted, that can address this issue. (Tr. 47:17–20.)

### J.   Record Concerning Appearance at Court Proceedings

Ms. Gehrke has never failed to appear at any court proceedings.

### K.   Probation, Parole, or Other Release

Ms. Gehrke was not under any probation, parole, other release pending trial, sentencing, appeal, or completion of sentence at the time of her arrest.

### 4.   Nature and Seriousness of the Danger to Any Person or the Community

The Government has presented no evidence that Ms. Gehrke would pose a danger to any other person or the community if this Court were to release her pending trial.

### c.   The Government's Argument

The Government presented argument in support of Ms. Gehrke's detention, relying substantially on her purported preparations to flee the United States (tr. 15:9–10) and her supposed access to financial resources (tr. 14:18). However, those arguments are misplaced. Several examples follow:

### 1.   Arrest

Federal law enforcement agents arrested Ms. Gehrke at the Phoenix Sky Harbor International Airport as she was departing the United States for a honeymoon in England, Italy, and Greece. Ms. Gehrke was unaware of a pending arrest warrant before her arrest and both she and Mr. King had purchased a return-flight to return to the United States thirty-six days later. (Tr.

32:7–11). Furthermore, England, Italy, and Greece are not countries to which Ms. Gehrke could flee and avoid extradition.

### 2. Cryptocurrency Access

The Government seized a note in a safe-deposit box with instructions on accessing cryptocurrency. (Tr. 17:4–7.) There is no evidence that Ms. Gehrke left this note for the purpose of someone's transferring any cryptocurrency abroad; regardless, the Government seized the information and Ms. Gehrke has no access to the cryptocurrency.

### 3. Aircraft Access

The Government argued that Ms. Gehrke could access a friend's private plane to flee the country. (Tr. 21:8–11.) Although Ms. Gehrke's friend owns a small, single-propellor, private plane, its range is short, and Ms. Gehrke's friend is not a pilot. Furthermore, Ms. Gehrke has no passport on which to travel internationally, a requirement to enter a foreign nation on even a non-commercial flight.

### d. Conditions of Release

Ms. Gehrke submits that she had no intention to flee the United States at the time of her arrest; that she has no intention or ability to do s if this Court releases her pending trial; and that there are conditions of release that this Court could impose to assure her presence at future court proceedings, *inter alia*, a secured bond in any amount, a financially-responsible party to co-sign that bond, a third-party custodian, and home detention (which includes location monitoring).

### III. Excludable Time Pursuant to the Speedy Trial Act

Ms. Gehrke, pursuant to D. Ariz. L. Cr. R. 12.2(a), acknowledges that excludable delay under 18 U.S.C. § 3161(h)(1)(D) will occur as a result of this motion or of an order based thereon.

//

## IV. Conclusion

Ms. Gehrke, based on the foregoing factual assertions and arguments, prays that Court:

(1) hold a hearing on this motion;

(2) receive evidence at that hearing;

(3) revoke the Order of Detention Pending Trial (ECF No. 39); and

(4) release Ms. Gehrke from the custody of the Attorney General on an appearance bond, with conditions, pending the trial of this case.

Date: July 24, 2024

Respectfully submitted,

*s/ Joshua Sabert Lowther*
Joshua Sabert Lowther, Esq.
